IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:16-CV-61-FL

**FILED**

JUL 2 4 2018

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

| | | |
|---|---|---|
| SUSAN W. VAUGHAN | ) | AMENDED |
| PLAINTIFF, | ) | MOTION FOR |
| | ) | RECONSIDERATION |
| | | with CORRECTED |
| | | EXHIBIT ATTACHMENTS |
| v | ) | |
| SHANNON FOLTZ, et al | ) | RULE 54 (b) |

> **Motion DENIED.**
> This the 23 day of August , 20 18
> /s/Louise W. Flanagan, U.S. District Judge

| | |
|---|---|
| | ) |
| DEFENDANTS | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COMES NOW Plaintiff, Susan Vaughan, pursuant to Federal Civil Rule 54 (b), seeking

reconsideration of some of the partial summary judgments and conclusions stated in

Orders of October 27, 2017, and June 20, 2019 and others. This motion for

Reconsideration is brought under Rule 54(b), which recognizes that this Court has

"inherent power to reconsider an interlocutory order as justice requires." Wannall v.

Honeywell Int'l, Inc., No. 10-351, 2013 WL 1966060, at \*4 (D.D.C. May 14, 2013).

Also from the 4th Circuit

> *Because Plaintiffs seek reconsideration of a non-final, interlocutory order, their*
> *motion is properly analyzed under Fed.R.Civ.P. 54(b). See Fed.R.Civ.P. 54(b)*
> *("[A]ny order or other decision, however designated, that adjudicates fewer than*
> *all the claims or the rights and liabilities of fewer than all the parties does not*
> *end the action . . . and may be revised at any time before the entry of a judgment*
> *adjudicating all the claims and all the parties' rights and liabilities. ").*
> *COULIBALY v JP MORGAN BANK, US District Court Maryland, 2013*

Plaintiff's requests for reconsideration center mainly around the Orders' misapplication

of Troxel and Vosburg to Plaintiff's case; this Court's failure to recognize Plaintiff's

legal status of custodian, based on laws effective in August, 2014; the illegitimacy of the

venue transfer not being portrayed as such in the order; misstatements regarding the "responsible individual" issue and the jurisdiction issue.

There are also a few other errors, some only minor, which Plaintiff suggests should be corrected.. The arguments and citations and/or attachments, supporting these requests follow:.

## ARGUMENTS

1.    The Orders issued by this Federal District Court, all of them, either state or imply that Plaintiff was not legal custodian of EJV before his removal, which is significantly incorrect, as this assertion also effects Plaintiff's Constitutional and state rights.

a)  Footnote 9 on page 12 of the October 27, 2 917  Order states that Plaintiff

"alleges no facts  in either her complaint or amended complaint or in either

of her objections to the M&R or Supplemental M&R that she had or has

legal ….custody of her grandchild. and alleges facts that indicate

otherwise."  This is incorrect.

Number 4, under the "PARTIES" section of Plaintiff's original states the

following:

> *PARTIES*
>
> *4. At all times relevant to this Complaint, Plaintiff SUSAN VAUGHAN resided in the County of Dare, North Carolina maintaining a family as the mother of a disabled adult, the child's mother - and as the grandmother, caretaker and custodian of the mother's son, before he was unlawfully removed from their home by Defendants.*

Also, the first paragraph of the INTRODUCTION of Plaintiff's

original complaint reads as follows:

## *INTRODUCTION*

*Based on information and belief, PLAINTIFF alleges that DARE DSS
and JUDGE DAVIS intentionally avoided their duty to either allege
or properly rely upon facts that meet any of the NC Juvenile
Code's definitions of abuse, neglect or dependency or conform to
State or Federal DHHS requirements for PETITION allegations
presented with the purpose of intervening in the cohesion of a
family unit and child/parent/caretaker/custodian relationship*

Also, in paragraph #133 of Plaintiff's original complaints she states the

following:

*This failure to recognize PLAINTIFF as the child's legal
custodian and caretaker, based on Juvenile Code definitions
effective in August, 2013, PLAINTIFF came to realize was
intentional, to cover up the fact that PLAINTIFF's as well as the
mother's right under 50-A and UCCJEA 205 a and NC GS 50-A to
be heard before any child custody determination was made, were
violated.*

Found in Plaintiff's original complaint, paragraph # 218, is the

statement: "…based on Juvenile Code 7B at the time of the child's removal,

PLAINTIFF met the definitions of both caretaker AND custodian…."

b)  Throughout both Plaintiff's original and Amended Complaints, Plaintiff

repeatedly refers to herself as the grandmother/caretaker/custodian of EJV.

c)  Based on the Statute in effect on August 14, 2013, Plaintiff met the definition

of "custodian." Cited below is NC GS 7B-101 (8) that was effective in

August, 2013, in which a "custodian." is defined as

*(8) Custodian. - The person or agency that has been awarded legal
custody of a juvenile by a court **or** a person, other than parents or legal
guardian, **who has assumed the status and obligation of a parent**
without being awarded the legal custody of a juvenile by a court.
[emphasis added].*

d) Even though the law regarding the legal definition of "custodian" was changed

on October 1, 2013, that did not affect Plaintiff's status at the time EJV was

removed. on August 14, 2013, from her custody in violation of several laws.

e)    Even though the Court would finally recognize only Plaintiff's caretaker status, (but not until after the fourth hearing), this was because both Dare and Currituck DSS falsified, under oath, their legally required **Affidavits as to Status of Minor Child.**. Dare omitted Plaintiff's name entirely, and Currituck omitted the fact that EJV was in Plaintiff's sole care and custody after his mother was hospitalized. Furthermore, Neither department honestly answered the question on the Affidavit regarding who had and/or claimed custody.  See the attached copies of  Dare County"s [Foltz's] false, Currituck County's [Harris'] false,  and Plaintiff's corrected Affidavits for comparison [Exhibits 1, 2, 3 respectively].

f)  Plaintiff asserts she had Constitutional rights as  custodian of EJV. Also as a US Citizen  Plaintiff had right to due process, to not have her name and reputation besmirched  by false allegations and in a way that forced her to go to great expense to defend against lies that ended up depriving her of her  right to reunification with her grandson, of her right to adopt him and in a way that continues to deprive her of any association whatsoever with her grandson, whom she took very good care of the first months of his life - a fact Foltz admitted, herself, before she falsely accused Plaintiff of nothing that amounts to child neglect [see attached Exhibit 4].

2.    Regarding Troxel": Plaintiff argues that recognition of her correct legal status as Custodian has some bearing on this Court's interpretation of Troxel as it relates and does NOT relate to this case. Troxel (see citation below) involves grandparents who are not

custodians and do not live with the grandchildren they, nevertheless, claim they have a right to visit on their terms. The grandparents' claim to **visitation** in Troxel conflicts with the desires of the children's mother. The Court rightfully ruled that the mother's rights trumped the grandparents'.

> *Petitioners Troxel petitioned for the right to visit their deceased son's daughters. Respondent Granville, the girls' mother, did not oppose all visitation, but objected to the amount sought by the Troxels. The Superior Court ordered more visitation than Granville desired, and she appealed. The State Court of Appeals reversed and dismissed the Troxels' petition. In affirming, the State Supreme Court held, inter alia, that § 26.10.160(3) unconstitutionally infringes on parents' fundamental right to rear their children [Troxel v. Granville, 530 U.S. 57 (2000)].*

3. Plaintiff's case, however, is entirely different than the circumstances in Troxel. Plaintiff was the primary caretaker of EJV since his birth and his custodian during and before his mother's absence, and it was the mother's choice that Plaintiff remain as his custodian during her recovery. Plaintiff, EJV and his mother were, before DSS interfered, one family unit .

However, Foltz initially misled the court to believe that EJV had become dependent because of his mother's hospitalization, omitting the fact that he was also living with and being cared for by Plaintiff, and her Petition maliciously attacks Plaintiff, not as the one caring for him and who had custody, but as an inappropriate consideration for placement, as if Plaintiff lived elsewhere and had nothing to do with EJV's care and custody all his life.

a) According to NC GS 7B-101 (18 b), cited below, and NC DHHS regulations, Plaintiff and their home are the person and place with whom EJV should have been reunited, even though he should not have been removed in the first place

*NCGS 7B-101 (18b) **Return home or reunification**. -*

> *Placement of the juvenile in the home of either parent **or placement of
> the juvenile in the home of a guardian or custodian from whose
> home the child was removed by court order.***

b) According to North Carolina Department of Health and Human Services, DSS
On-line Manual, reunification is with the person from whom the child was taken -
even if only a caretaker [Exhibit 5].

> ***1. Reunification***
> *Reunification means that the biological/adoptive parent(s) or caretaker from
> whom the child was taken regains custody of the child.*
> http://info.dhhs.state.nc.us/olm/manuals/dss/csm-10/man/css1201c6-06.htm

4.    Plaintiff therefore argues that Troxel is relevant to this case ***only*** as it supports

EJV's *mother's choice* to have her son in Plaintiff's custody, a choice DSS agent Foltz

confirmed under oath in Court on September 23, 2013, the proof of which is documented

in the testimony of Shannon Foltz found in the court recording for that date, which

Plaintiff can, or the district court should. provide this Court on request.

5.    Regarding the "Responsible Individual" issue. The Court's June 20, 2018 Order,

# 3 (a) under "New Claims and Allegations" states the following:

> *Plaintiff's second claim, a 1983 procedural due process claim arising under the
> Fourteenth Amendment, alleges injury to reputation regarding plaintiff's
> placement on the list of "responsible individuals" under N.C. Gen. Stat. 7B.
> Plaintiff now clarifies that she has not been placed on this list.*

The first sentence above is not fully correct, and the second is completely incorrect.

a) Plaintiff has never stated nor implied that she has *not* been placed on a list or

registry naming her as a "responsible individual." Plaintiff stated that she did not

*know* whether or not she was placed on such a list, and that she did not "allege"

that she *had* been so placed, because she did not have access to that information.

It is, in fact, Defendants and their attorney who claim, without providing

any substantiating evidence, that Plaintiff was not placed on the list. Plaintiff

needs tangible proof to support this claim and that she was not placed on any list,

anywhere, naming her as a child abuser or neglecter or implying such. In fact,

to claim that Plaintiff name was not added to the state's Central Registry, with

information that could be used against her .would be a contradiction of NCGS

7B-311 (a) [see attached] and the information found in the State's 47-page

Manual #1425 "Central Registry" found here,

https://www2.ncdhhs.gov/info/olm/manuals/dss/csm-60/man/CS1426.PDF

   Both documents explain the certainty that Planitiff is listed as a

"perpetrator" on the NC DHHS's Central Registry.

   Because Plaintiff was never provided the 7B-320 required evidence

Currituck DSS allegedly relied upon to accuse Plaintiff, and she was then denied

by Matusko a hearing date after she file her̂her Petition for Judicial Review, DSS

was remained in a position to blackmail, threaten, coerce Plaintiff into signing a

Stipulation of a lesser "charge" which she was denied any opportunity to Appeal and

have the allegations of neglect dropped , .because of more Violations committed by

Matusko in his mishandling of Plaintiff's Notice of  Appeal and DSS in removing

Plaintiff as a party and blocking her ability to appeal.

b)   Page 4, #11 of  Plaintiff's March 30, 2018 Motion for Clarification further

supports Plaintiff's request for correction.  It states the following:

   *Plaintiff  has no way of knowing if DSS agents did or did not, in the end,
   have her placed on a State Responsible Individuals List.*

c) Plaintiff alleges numerous times, and has provided evidence to substantiate her

   claim, that Currituck defendants did indeed designate Plaintiff as a "responsible

individual." [see **attached** copy of Currituck DSS Juvenile Summons, Exhibit 7, issued Sept. 18, 2013 and filed served Sept 23, 2013].

In other words, Plaintiff was accused by Currituck DSS defendants of "seriously neglecting" her grandson, which is the same, pursuant to under 7B-101 (18 a), as labeling her a "responsible individual" - although Defendants never provided any evidence to substantiate that allegation, never provided Plaintiff with evidence required by 7B-320. And Sheriff Doughtie prevented the pediatrician from providing subpoenaed evidence that disputes that claim.

> *(18a)    Responsible individual. - A parent, guardian, custodian, or caretaker who abuses or seriously neglects a juvenile.*

d)    Plaintiff argues that the claim regarding injury to her reputation does not    involve *only* this designation, the false allegation of "serious neglect" and their consequences. It involves all the false allegations DSS agents alleged against her and the violations committed that obstructed due process and her ability to rebut false allegations, which cruelly blocked her right to be reunited with her grandson.

All of DSS malicious lies remain on the record of several cases and continue to negatively affect  Plaintiff's reputation and numerous other rights.

e)    The attached [Exhibit 8] excerpt from DSS Order dated June 23, 2016 is evidence that DSS continued to use past, unsubstantiated allegations that were alleged in the "Neglect/Dependency" case to  discredit and accuse Plaintiff and deny her Petition for Adoption of EJV despite all the due process violations  that created those false allegations.

f)    Plaintiff reiterates, that had numerous violations of her constitutional right to due process not been committed, repeatedly, by Defendants and others this Court

has not allowed to be named defendants in this case, these untrue, defamatory allegations could not remain on the record and continue to be used - as they are being used as they are even now against Plaintiff, by Defendants' attorneys who denigrate Plaintiff and her character in their responses.

g) Because these false allegations remain on the record, many assume they are true, even though they are completely false, distorted or irrelevant to a child's welfare, as confirmed by NC DHHS' Screening Tools and legal definitions.

6. Plaintiff's March 30, 2018 Motion for Clarification also states the following:

*13. The current Complaint alleges that DSS agents, Clerk of Court Matusko and Sheriff Doughtie conspired to designate Plaintiff as a "responsible individual" and block Plaintiff's attempt to clear her name of that Designation, which was used to coerce her into signing a stipulation. The designation has not been removed, despite DSS promises, either from the Petition or Orders in the State District Court Records*

a) Currituck DSS took no action whatsoever, **despite claims** of removing the "serious neglect" accusation, to amend the petition or Summons, even though they had the option to do so under 7B-800 .

*b) § 7B-800. Amendment of petition.*
*The court, in its discretion, may permit a petition to be amended. The court shall direct the manner in which an amended petition shall be served and the time allowed for a party to prepare after the petition has been amended. (1979, c. 815, s. 1; 1998-202, s. 6; 1999-456, s. 60; 2010-90, s. 11.)*

The official copies of the Petition, found in the Record on Appeal with the NC Court of Appeals provides evidence that DSS never amended the Petition accusing Plaintiff of "serious neglect" and designating her as a "responsible individual."

7. The next argument Plaintiff asks this Court to reconsider is the one involving

jurisdiction and judge immunity. The UNC School of Government specifically addresses what is required for jurisdiction of a child Abuse/Neglect/Dependency (A/N/D) case. And UNC SOG's Sara DePasquale, reiterates those requirements, and where they are found in the law, in a blog on the School's website to distinguish between Venue and Jurisdiction as they apply to A/N/D cases.

a) The School of Government states the following regarding jurisdiction:

> *The district court has exclusive, original jurisdiction over any case involving a juvenile alleged to be abused, neglected, or dependent. G.S. 7B-200. The district court also has exclusive original jurisdiction over termination of parental rights cases. G.S. 7B-200(a)(4); G.S. 7B-1101. In a particular case, however, the court may lack subject matter jurisdiction if steps necessary to invoke the court's jurisdiction have not been taken [emphasis supplied , UNC SOG Manual 3.2 [Chapter 3, p5] A. Introduction: Subject Matter Jurisdiction states]*

b) UNC SOG's Sara DePasquale writes the following in a blog about Venue vs.

Jurisdiction

> *The General Assembly has the power to "fix and circumscribe the jurisdiction of the courts," which can require certain procedures. In re T.R.P., 360 N.C. 588, 590 (2006). A/N/D and TPR cases are statutory in nature and set forth specific requirements that must be followed. Id. In an A/N/D or TPR action, the first place to look is the Juvenile Code (GS Chapter 7B) because it establishes both the procedures and substantive law for these types of juvenile proceedings. See GS 7B-100; -1100. https://civil.sog.unc.edu/its-complicated-venue-vs-jurisdiction-in-and-and-tpr-actions/*

c) Another source makes a similar statement regarding other types of cases:

> *The petition required to put the court in motion and give it jurisdiction must be [in] conformity with the statute granting the right and must show all the facts necessary to authorize it to act, — i. e., it must contain all the statements which the statute says the petition shall state, — and if the petition fails to contain all of these essential elements the court is without jurisdiction. Hook v. Wright, 329 Ill. 299; Musselman v. Paragnik, 317 id. 597; Keal v. Rhydderck, 317 id. 231. Brown v. VanKeuren, 340 Ill. 118,122 (1930).*

d) The facts in Plaintiff's case show that Judge Davis and Caseworker
Foltz failed in several ways to take the legal "steps necessary to invoke
the court's jurisdiction."

1. First Foltz had no legal right pursuant to 7B-404, to take her petition to the
magistrate, seeking EJV's removal. The laws required her:

a) to have legal grounds and standing to file an A/N/D Petition

b) to take her petition to the courthouse for processing, unless it
was **closed** AND there was an emergency (She did NOT claim
or have an emergency, And she didn't take her petition to the
courthouse, which was open.at the time)

c) to provide an attached Affidavit as to Status of Minor Child
containing all the required information disclosing where and with
whom the child had lived in the past 5 years, who had physical
custody of the child and who claimed a right to custody. She
omitted *all* except the location. [Exhibit 1].

d) to allow the person having physical custody and parent to be
heard prior to a custody determination

2. Second, Judge Davis had no right and no jurisdiction, under the
circumstances, to participate in *an ex parte* telephonic hearing seeking to invoke
jurisdiction when the courthouse was open for business. Law allowed her to:

a) preside over hearings in A/N/D cases over which District 1
Jurisdiction had been *properly* invoked in compliance with
7B-401-407. Neither she nor Foltz complied with any of these
laws that mandate the "steps necessary to invoke the court's
jurisdiction." [Exhibit 9, NCGS 7B-401-407]

b) participate in an *ex parte* hearing seeking a nonsecure
Custody order *only* "pursuant to criteria set out in G.S. 7B-503"
and in compliance with section 500 of the NC Juvenile Code that
speaks to dangerous situations, where a caseworker has reasonably,
for the child's protection, already removed a child without order or
warrant, for a 12-hour period, in which time a parent or custodian
has the right to be with the child and is given an opportunity to be

heard on the matter *before* a nonsecure custody order is sought.

3 . Again, an emergency was not even alleged in Plaintiff's case. The **attached copy of the** August 14, 2013 nonsecure custody order [Exhibit 10] **provides a box** to check (#3) when there is an "immediate threat of harm," to the child which includes a requirement to "describe" that "threat of harm." That box was left blank, because clearly there was no immediate need, no threat of harm - no emergency - none even alleged - that would allow Foltz to lawfully seek an *ex parte* order at the magistrate's office (and then only if the courthouse was closed) or for Judge Davis to authorize such an order. Neither condition existed. Nor was the criteria of 7B-503 met, based on 7B Definitions and NC DHHS "Screening Tools," found on the state website, linked below.

https://www2.ncdhhs.gov/info/olm/manuals/dss/csm-60/man/CS1407.pdf  pp 53, 59

4. Plaintiff's question remains. How does a caseworker and judge establish jurisdiction and earn immunity by breaking the laws and also violating Plaintiff's right to due process in that process? How can immunity apply in this case, especially considering the gravity of the consequences?

5. That unlawfully sought and unlawfully authorized order not only authorized caseworker Foltz and police officers to invade Plaintiff's home with no probable cause for doing so, it put into motion a barrage of false allegations and defamation of character against Plaintiff that has snowballed into the outrage described herein and in her complaints.

6. Plaintiff further argues that this Court has confused venue with jurisdiction. Subject Matter Jurisdiction Is Not Venue and Vice Versa:

> *These two legal concepts are not interchangeable. "Jurisdiction implies or imports the power of the court; venue the place of action." Shaffer v. Bank, 201 N.C. 415        (1931).*

Plaintiff may have made a bad choice with her "peanut butter sandwich" example, but her point was and is that venue alone is not sufficient to establish subject matter jurisdiction. There has to be a "crime" committed  - a wrong done - harm to a child, in this case - AND  proper due process followed, in order to establish subject matter jurisdiction. Those conditions did NOT exist!

8.   At any point before the A/N/D case got out of control as it did, Judge Davis could have corrected her error. Shannon Foltz could have corrected her Affidavit and refiled a petition, if she had grounds, the proper way -at the courthouse, allowing Plaintiff to be heard prior to any child removal.  She and the court would have learned that there was no threat to EJV's well-being, that he was unharmed, healthy and well-cared for,  that Plaintiff had set up an appointment with a TBI expert for the mother that would help her recover and be able to care for her child, and any other concerns could have been cleared up. They already had a pediatrician report confirming no harm.

9   But Plaintiff NEVER got that opportunity, even though she filed a Motion [Exhibit 11], while the case was still in Dare County, to stay the proceeding until the faulty, fraudulent Affidavit was corrected, as  50A-209  allows. Nevertheless District 1 and DSS chose to break even *more* laws, rather than to simply correct their previous violations.

c)  NC GS 50A-209 (b) states:

> *If the information required by subdivisions (a) is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished* [Exhibit 11].

10.. One of  Plaintiff's  requests for correction involves footnote 4 on page 3 of the

October 27, 2017 Order, which only echoes DSS's *excuse* for the transfer to Currituck County, failing to point out that the claim of "conflict of interest " was not a legitimate reason for venue transfer prior to adjudication before the law was amended in October, 2013.. In fact the law at the time did not allow *any* reason or excuse for transfer prior to adjudication.

a) Even if one could argue that there were no *legal* options for correcting the conflict of interest *that DSS created,* there were no legal grounds at the time for transferring a case prior to adjudication *for ANY reason*, nor did DSS meet all of the conditions of the new law effective on October 1, 2013 anyway.

In fact there was at least one legal option, which DSS chose to unlawfully ignore - EJV's mother had signed over healthcare power of attorney to Plaintiff.

b) Said footnote, therefore, should have stated that "Dare DSS *claims* the reason for transfer was due to a conflict of interest, however the law in effect at the time did not allow transfer of venue prior to adjudication - for any reason."

c) The law on case transfers effective in September, 2013 reads exactly as follows with emphasis in bold added:

> **§ 7B-900.1. Post adjudication venue.**
> (a) At any time **after** adjudication, the court on its own motion or motion of any party may transfer venue to a different county, regardless of whether the action could have been commenced in that county, if the court finds that the forum is Inconvenient, that transfer of the action to the other county is in the best interest of the juvenile, **and that the rights of the parties are not prejudiced by the change of venue.**

Of course Plaintiff was not consulted about the change of venue, nor was it in the best interest of anyone except those seeking to cover up the fraudulent Dare County actions.

d) Plaintiff argues the importance and relevance of the distinction described above is that even if Dare DSS had established agency jurisdiction, Currituck DSS did not, nor did District 1 have any legal authority to transfer the case to Currituck County.

11. Next Plaintiff argues that Vosburg v Department of Social Services does not apply to her case. Vosburg addresses the issue of immunity for DSS caseworkers performing their function filing removal petitions in a normal and legal way.. Plaintiff agrees that caseworkers, because of their important role in protecting children, should enjoy at least quasi-prosecutorial immunity while seeking removal orders -- *so long as they don't commit crimes in the process and correct their mistakes as soon as they are made aware of them.*

Plaintiff's complaint is *not* in regard to caseworkers' roles of filing removal petitions per se. Plaintiff's complaints are specifically directed toward caseworkers and a judge who violated due process and other laws in their *attempt* to invoke jurisdiction, including, on the caseworkers' part, fabrication of evidence and omission of crucial evidence and perjury. These crimes of fraud and perjury are felonies - felonies on the same level as child abduction!

Social workers' behavior in Plaintiff's case has nothing to do with the "mistakes" referred to in a case cited in Vosburg in support of its decision, basing it on the Supreme Court decision in *Imbler* [cited below].. Plaintiff is not complaining about trivial matters or honest mistakes made for humanitarian reasons. The crimes committed by caseworkers against Plaintiff caused trauma to her daughter and likely life-long harm to EJV and involved blatant lies and misleading information that blocked Plaintiff's ability to defend

herself initially, followed by a concerted cover-up to protect caseworkers who Plaintiff

had given every opportunity to correct the lies and omissions and other violations that

caused and led to more serious damages - damages that could have been easily and

quickly ameliorated.

> *The social worker's independence, like that of a prosecutor, would be*
> *compromised were the social worker constantly in fear that a **mistake** could result*
> *in a time-consuming and financially devastating civil suit. In Meyers v. Contra*
> *Costa County Dept. of Social Services, 812 F.2d 1154*
> https://www.leagle.com/decision/19891017884f2d1331991

Furthermore, how is a civil suit against a caseworker financially devastating to him/her,

when they don't have to pay any costs?

Also cited in the Vosburg ruling is a decision made by the 6th Circuit based on

Supreme court rulings in *Imbler, Butz, and Briscoe v. LaHue*. The 6th Circuit wrote that

social workers in their jobs to protect children:

> *«...must be able to perform the necessary tasks to achieve this goal without the*
> *worry of intimidation and harassment from dissatisfied parents.»*

Plaintiff would agree with that statement, but Plaintiff can assure this Court and

anyone else, that had caseworkers in Dare and Currituck not falsely accused her, not

committed fraud and perjury and not violated many other laws, including her right to be

heard at a meaningful time and way, she would not have any need to file any complaint or

pleading at all. It is insult to injury that caseworkers who intimidate, lie harass and

destroy families are the ONLY ones protected against the kind of intimidation and

harassment and much much worse, that Plaintiff has endured for over five years, because

Vosburg is being used as an excuse to allow them to get away with anything and

everything..

Another very important issue related to absolute immunity is one very *erroneous*

justification offered in support of Imbler - in its assuming that there are safeguards to counter any prosecutorial misconduct.:

> *The duties of the trial judge, and the adversarial and appellate processes, are designed to prevent many potential violations of constitutional rights. See Butz v. Economou, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).*

What is important to note in Plaintiff's case is that DSS not only fabricated evidence against Plaintiff, failed to properly invoke jurisdiction, failed to provide any evidence to support neglect and dependency, while stifling Plaintiff's ability to rebut - but also the Clerk of Superior Court, DSS and the judges, even her own attorney, conspired to block her from *appealing* the determination of neglect based solely upon a fraudulently acquired stipulation, that Plaintiff contested in court, and for which Plaintiff sought but was denied amendment... So where were the so-called safeguards the Supreme Court is apparently naïve enough to believe exist in Juvenile courts, despite much evidence to the contrary, based on research by NCCPR and others, and many cases like Plaintiff's. that have occurred and continue on because of misapplication of absolute immunity.

Nevertheless, the Supreme Court reasoned in Antoine and Kalina - that there *are* exceptions to immunity within the "prosecutorial" process of caseworkers. These exceptions, such as submitting Affidavits to the court, are **relevant to this case**. Plaintiff has complained since September, 2013 about the fraudulent Affidavits submitted by Caseworkers Foltz and Harris, regarding the status of EJV, both of which failed to acknowledge the fact that Plaintiff had and claimed custody of EJV. The custodial status was a crucial issue in Plaintiff's ability to appeal and reunification, and is crucial to this Federal lawsuit, regarding her Civil Rights claims to association, reunification and ability to regain custody of and adopt her grandson.

*Therefore, a prosecutor's submission of an affidavit to the court as a witness, as in Kalina, or a court reporter's preparation of a transcript for the court, as in Antoine, were not absolutely immune because those functions were not absolutely immune at common law. [ Miller v Nevada - see full citation below].*

*The Court in Kalina further emphasized that it is only the specific function performed, and not the role or title of the official, that is the touchstone of absolute immunity. Kalina, 522 U.S. at 127, 118 S.Ct. 502. Officials performing the duties of advocate or judge may enjoy absolute immunity for some functions traditionally performed at common law, but that protection does not extend to many of their other functions. Id. at 129–31, 118 S.Ct. 502; ?see also Antoine, 508 U.S. at 435–37, 113 S.Ct. 2167. The Court said that although a prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate in a criminal prosecution, only qualified immunity shields the prosecutor acting as a complaining witness in presenting a judge with a supporting affidavit to establish probable cause for an arrest. This is because the common law did not recognize absolute immunity for such functions when the civil-rights statute was passed in 1871. Kalina, 522 U.S. at 123–24, 118 S.Ct. 502 (citing Imbler, 424 U.S. at 410, 96 S.Ct. 984); ?id. at 127 & n. 14, 118 S.Ct. 502 (citing Malley v. Briggs, 475 U.S. 335, 340–41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). We must now recognize that beyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists. [Miller v Nevada, **United States Court of Appeals, Ninth Circuit, No. 01–15491. Decided: July 09, 2003***

In regard to the above, cited in Miller v Nevada, Plaintiff asks this Court to consider the facts discussed earlier:

1. That omitting exculpatory evidence and submitting false evidence are not part of "traditional functions," and

2. That at least the specific acts of falsifying Affidavits as to Status of Minor Child are not covered by immunity. These fraudulent Affidavits misled the court to assume that EJV was left without anyone to care for him when his mother was hospitalized, and that Plaintiff had no right to be heard in the matter pursuant to NC GS 50A, UCCJEA 205 (a) and 7B-506 (b) or to other Constitutional and state rights to reunification with her grandson.

Plaintiff does not see any justification for awarding immunity protection to anyone who commits serious crimes, especially those carrying grave consequences - whoever they are, whatever their role and whatever the precedent. The ninth circuit agrees with Plaintiff (Hardwick v Vreeken) on this issue, ruling that "no law permits false testimony." The Fourth Circuit has not yet addressed the issue specifically, instead acting, as if caseworkers all have good intentions, never commit serious crimes, never lie under oath nor have any other incentive than the well-being of a child -- or acting as if it doesn't matter when they do.

12. Next, minor Clerical errors in the first October 27 Order include two on pages 2 and 3 as follows: EJV is Plaintiff's grandson (not grandaughter). The alleged reasons for removal of EJV given by Dare and Currituck Counties were Neglect AND Dependency , not just neglect, as the Order states . In the June 20, 2018 order, the correct spelling of one of the Officer's names is Sudduth, not Suddouth, according to the Police officer who provided the name to Plaintiff and information on the Police Department's website.

13. On page 3 of said October Order, paragraph 2, correctly stated, would say: that "Plaintiff asserts that the state court's decision not to return EJV to her custody and home was based on false allegations, with Plaintiff not allowed a meaningful opportunity to rebut said allegations." However it's worded otherwise, it should at least say that Plaintiff expected EJV to be reunited with Plaintiff who, according to 7B-101 was his physical and legal custodian at the time he was removed.

14. Regarding the chastising of plaintiff on page 7 of the October Order, Plaintiff states that this is a misunderstanding. Jennifer Vaughan, who had been too ill to file before the statute of limitations expired, had requested to join the lawsuit, and Plaintiff did not

understand that she could not join and represent herself. She was in the process of

seeking assistance from a women's resource center. The order makes harsh assumptions

about Plaintiff which she believes are made out of context of full understanding of the

circumstances.

### CONCLUSION

In conclusion, Plaintiff reiterates that the damages resulting from DSS attack on

her reputation with false, and unsubstantiated allegations, and their and other Defendants'

actions in blocking her Constitutional right to rebut those allegations go far beyond

designating her as a responsible individual and affecting her ability to obtain

employment. The consolidated, orchestrated attack on Plaintiff's reputation and character

has depleted her finances, led to the loss of her house and property of over 20 years,

impeded her ability to help EJV's mother get the treatment she needs and denied

Plaintiff's right to reunification with her grandson. These false accusations have been

repeated in orders and private conversations with agencies, judges, clerks of court,

doctors and others, continuing to denigrate Plaintiff, as if they were the truth. They have

certainly led to her name as a "Perpetrator" being included on a State Registry and her

grandson listed as "neglected" when he never was, except by DSS's removal.

For example in 2016 when plaintiff sought to adopt her grandson, DSS attorney,

on behalf of Defendants, wrote in an order, without providing any evidence to support its

"facts, " that Plaintiff never even advocated for her daughter's health treatment, that she

wouldn't have taken her grandson to the pediatrician if DSS hadn't gotten involved, even

though the evidence Plaintiff has presented to the court many times contradicts those lies.

[Exhibit 14 and the appointment letter with Dr. O'Shannick provided earlier, for

examples]. The Order then concludes that Plaintiff was too "unfit" or "inappropriate" to adopt her grandson, which coincides with one of the purposes stated for the Central Registry, to notify those making decisions about adoptions of "perpetrators" on their list.

The RI designation, followed by Director Romm's failure to provide Plaintiff with the alleged "evidence" that she and/or her cohorts used to accuse Plaintiff of "serious neglect" was never substantiated by any facts or evidence, and it was never removed from the Petition on record. How was Plaintiff to defend herself against so-called evidence she was never informed of pursuant to requirements of 7B-320 [Exhibit 13]?

Plaintiff alleges that Romm didn't provide that required evidence because there *was* no evidence. Instead, there were clear grounds for a complete mistrial, and yet Romm, Matusko and all those who falsely accused plaintiff are going to get away with their uncorrected errors and crimes against Plaintiff, and others down the road, unless Plaintiff if given the opportunity to have all violations and supporting evidence examined.

The irony of this case is that Plaintiff committed no crime, violated no laws and harmed no one. Yet she and her family are the only ones being punished, while multiple violators enjoy either absolute immunity or other protection of the courts and other authorities Since when did this add up to justice and protection of Civil Rights?

Defendants' attorney now claims that DSS attorney Courtney Hull, herself, made the determination of responsible individual, while. pointing out that an attorney cannot be sued for damages. Certainly Defendants' attorney knows or should know that 7B-403 and 7B-320 state that the DSS Director must screen allegations, draw and verify the petition and make the determination of serious neglect or responsible individual, which Hull had no legal right to do.

*§ 7B-403. Receipt of reports; filing of petition.*
*(a)      All reports concerning a juvenile alleged to be abused, neglected, or dependent shall be referred to the director of the department of social services for screening. Thereafter, if it is determined by the director that a report should be filed as a petition, the petition shall be drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing.*

Even if one argues that in this very serious act of accusing someone of neglecting

a child, putting that child in serious danger of harm from separation of those who love

and have cared for him since birth, a director may, nevertheless, have a designated

representative draw and verify the petition, that representative, however, does NOT

include anyone outside the agency. If Hull had been responsible for that RI and serious

neglect determination, then it would have been up to her to verify the petition, swearing

to it's accuracy. In Re T.R.P. has quite a lot to say about the gravity of the act of making

these sorts of allegations. In fact Currituck DSS's current director, who was a CPS

supervisor at the time, signed that petition that makes the "serious neglect" allegation.

*(b) The director may delegate to one or more members **of his staff** the authority to act as his representative. The director may limit the delegated authority of his representative to specific tasks or areas of expertise. The director may designate, subject to the approval of the Commissioner of Labor, additional personnel outside his staff to issue youth employment certificates.   [NC GS 108A-14 (b)]. [emphasis added].*

Courtney Hull was, in 2013, on the staff of Twiford Law Firm in Pasquotank County and

not a staff member of Currituck DSS.

The law is very clear not only about who is to draw and verify a petition, but also

that the Director has 5 days to notify the person designated as an RI  - and provide that

person **with the evidence** she/he used to make that determination AND to notify the

designated person of his/her right to file a Petition for Judicial review and of other details

required by law. Defendants cannot honestly allege that they obeyed the laws.

Plaintiff argues that neither Vosburg nor Troxel apply to her case, except as detailed above. She asserts that it is unjust to limit the damages she can recover from the barrage of violations and assaults on her reputation and due process rights, especially when she has spent all her money - lost her home - and been traumatized beyond repair trying to get one judge - one court -or one oversight or law agency - to acknowledge the crimes committed against her and her family and the results of those crimes.

The losses mentioned above don't begin to address the pain and suffering these defendants have inflicted upon Plaintiff and her family or the consequences of removing her grandson and adopting him to strangers, never allowing Plaintiff or his mother to see him again - or even say goodbye. This unlawful adoption took place even as Plaintiff was in the process of appealing her claim denying the legitimacy of the entire A/N/D cases and termination of the mother's rights.

To conclude that the only damages Plaintiff can seek from DSS Defendants and Matusko are specifically related to damage to reputation - and only then, if Plaintiff can prove she lost employment because of her inclusion on a state list or registry that she cannot even access -seems to be grossly unjust.

. The damage to Plaintiff's reputation began with Foltz's false allegations in the initial Dare County Petition, which were carried over to the Currituck Petition , with the latter adding its lies, and compounded by the way Dare and Currituck DSS unlawfully handled those petitions and all the other initial and subsequent violations of laws (state and federal) that violated Plaintiff's due process right to rebut those false allegations that remain in the records and continue to violate Plaintiff's Constitutional rights.

Therefore Plaintiff respectfully requests correction of portions of the pretrial orders in this case that misrepresent facts, Plaintiff's statements and status as EJV's custodian, and reconsideration of decisions that misapply Troxel, Vosburg and caseworker and judicial immunity, which too severely limit Plaintiff's right to damages.

This the 16th day of July, 2018.
Amended and Resubmitted with Amended Attachments

Listed and described as Exhibits on July $\underline{23}$[rd], 2018

_Susan Vaughan_
Susan Vaughan
613 Fifth Avenue, Unit 1
Greensboro, NC 27405
252-305-9992
wellsvaughan@gmail.com

## CERTIFICATE OF FILING AND SERVICE

The undersigned, Plaintiff Susan Vaughan, certifies that on this day she filed, via US Postal Service, the foregoing Motion for Reconsideration with the US District Court, Eastern District, NC located on Middle St. in New Bern, NC

The undersigned further certifies that she served copies of said Motion on the following attorneys for defendants, and on officers Sudduth and White by US Postal Service, properly packaged and stamped, to the addresses noted below:

July 16, 2018
Served again, with Amendments and Amended Exhibits, on July _____ 2018

Christopher J. Geis
Womble Bond Dickinson
One West Fourth St.
Winston-Salem, NC 27101

Kathryn Shields
NC Department of Justice
PO Box 629
Raleigh, NC 27602

Officers Mike Sudduth &
Chris White
c/o Kill Devil Hills Police Dept
102 Town Hall Dr.
Kill Devil Hills, NC 27948

_Susan Vaughan_
Susan Vaughan
613 Fifth Avenue, Unit 1
Greensboro, NC 27405
252-305-9992