IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:16-CV-61-FL

| | | |
|---|---|---|
| SUSAN W. VAUGHAN, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHANNON FOLTZ an individual, | ) | |
| SAMANTHA HURD an individual, | ) | |
| KRISTEN HARRIS an individual, | ) | |
| KATHLYN ROMM an individual, | ) | ORDER |
| RAY MATUSKO an individual, | ) | |
| STEPHANIE RYDER an individual, | ) | |
| CHUCK LYCETT an individual, | ) | |
| MELANIE CORPREW an individual, | ) | |
| JAY BURRUS an individual, DOES 1-10 | ) | |
| individuals, MELISSA TURNAGE, | ) | |
| KATHERINE MCCARRON, OFFICER | ) | |
| MIKE SUDDUTH, and OFFICER CARL | ) | |
| WHITE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on motion for summary judgment filed by defendants Jay Burrus ("Burrus"), Melanie Corprew ("Corprew"), Shannon Foltz ("Foltz"), Kristen Harris ("Harris"), Samantha Hurd ("Hurd"), Chuck Lycett ("Lycett"), Katherine McCarron ("McCarron"), Kathlyn Romm ("Romm"), Stephanie Ryder ("Ryder"), and Melissa Turnage ("Turnage") (collectively, "DSS defendants") (DE 60); motion for summary judgment filed by defendant Ray Matusko ("Matusko") (DE 65); motion to dismiss filed by defendant Matusko (DE 91); motion to dismiss filed by defendants Mike Sudduth ("Sudduth") and Carl White ("White") (DE 135); and plaintiff's motion for extension of time to serve defendants Sudduth and White with complaint (DE 141). The matters have been fully briefed, and in this posture the issue raised are ripe for ruling.

For the reasons that follow, the court grants DSS defendants' motion for summary judgment, defendant Matusko's motion to dismiss, and defendants Sudduth and White's motion to dismiss; denies as moot defendant Matusko's motion for summary judgment; and denies as moot plaintiff's motion for extension of time.

## STATEMENT OF THE CASE

Plaintiff initiated this action by filing motion for leave to proceed in forma pauperis ("IFP") on August 15, 2016, accompanied by proposed complaint.[1]  Plaintiff's claims arise in part from defendants' alleged involvement in the removal of plaintiff's adult daughter, Jennifer Vaughan, from plaintiff's home.  Plaintiff's claims also arise in part from defendants' alleged involvement in the removal of plaintiff's grandchild, and the child of Jennifer Vaughan, a minor child referred to as "EJV," from plaintiff's home.  Plaintiff originally asserted claims against defendants for constitutional violations pursuant to 42 U.S.C. § 1983 as well as conspiracy to violate those rights.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank entered memorandum and recommendation ("M&R") on May 8, 2017, wherein she granted plaintiff's IFP petition and recommended claims against certain defendants alleging violations of plaintiff's Fourth Amendment rights should proceed and plaintiff's remaining claims should be dismissed without prejudice.  Plaintiff filed objections to the M&R on May 23, 2017, challenging the magistrate judge's determinations concerning the dismissal

---

[1]  The court recounts the history of this case as relevant to the resolution of the instant pending motions where elsewhere the court has addressed the many discovery and procedural disputes between the parties. See, e.g., Vaughan v. Foltz, No. 2:16-CV-61-FL, 2018 WL 4140093, at *1 (E.D.N.C. Aug. 28, 2018) (DE 119) (in part granting plaintiff's motion for amendment of number of plaintiff interrogatories for DSS defendants and denying plaintiff's motion to strike and request for documents); March 5, 2018 text order (order denying plaintiff's motion to strike); DE 131 (order denying plaintiff's motion to strike); DE 132 (order denying plaintiff's motion for "consideration"); DE 138 (order denying plaintiff's motion to seal); DE 155 (order denying plaintiff's motion to compel); DE 156 (order denying plaintiff's objection to admissibility of evidence and/or motion to strike).

recommendations.  On May 24, 2017, this court noted that plaintiff had filed a 50-page objection, on the heels of a 92-page complaint, seeking in part to clarify her operative pleading.  The court recommitted the matter to the magistrate judge pursuant to Rule 72(b)(3) to review plaintiff's objections and address the same.

On July 10, 2017, plaintiff filed objections to the supplemental M&R, entered June 22, 2017, again challenging the magistrate judge's determinations concerning the dismissal recommendations. Amended complaint then was filed on August 25, 2017, wherein plaintiff sought in part to add her daughter, Jennifer Vaughan, as plaintiff.

On October 27, 2017, the court adopted some recommendations of the M&R and supplemental M&R, undertook its own frivolity review of plaintiff's amended complaint, and allowed the following two claims to proceed:

1) §1983 claim against defendants Burrus, Coprew, Foltz, Lycett, Ryder, Turnage, McCarron, and Officer Does of the Kill Devil Hills police department arising under the Fourth Amendment and

2) §1983 procedural due process claim against defendants Burrus, Corprew, Foltz, Harris, Hurd, Lycett, Matusko, Romm, and Ryder arising under the Fourteenth Amendment alleging injury to reputation regarding plaintiff's placement on the list of "responsible individuals" pursuant to N.C. Gen. Stat. § 7B-311.

Vaughan v. Foltz, No. 2:16-CV-61-FL, 2017 WL 4872484, at *1 (E.D.N.C. Oct. 27, 2017), reconsideration denied, No. 2:16-CV-61-FL, 2018 WL 1801419 (E.D.N.C. Apr. 16, 2018).  With regard to Jennifer Vaughan, the court noted that plaintiff "alleges that defendants Turnage and McCarron are Jennifer Vaughan's appointed guardians," that "Jennifer Vaughan involuntarily was committed, and apparently so remains" and that plaintiff's "attempt to add her daughter as a party plaintiff is a blatant effort to defeat the state authorized guardianship" and "it smacks of the unauthorized practice of law before this court," holding a nullity plaintiff's efforts to add Jennifer

3

Vaughan to this case.  Id. at *3.

Plaintiff thereafter filed motion to amend complaint which the court also construed as motion for reconsideration.  The court denied plaintiff's motion for reconsideration on November 22, 2017, and deemed plaintiff's motion to amend, to name "Officer Does" of the Kill Devil Hills police department, as premature and thus denied without prejudice to timely renewal where plaintiff stated she was then in the process of obtaining records which in the future would permit her to name those officers.

On April 9, 2018, DSS defendants filed instant motion for summary judgment.  (DE 60). DSS defendants rely upon sworn testimony of defendants Ryder, Burrus, Lycett, McCarron, Corprew, Foltz, Turnage, and Hull, along with the following documents from the state-court custody proceedings concerning EJV ("custody proceedings"): state-court juvenile petition filed by certain DSS defendants; written adjudication stipulation ("stipulation") entered into by plaintiff, Jennifer Vaughan, and certain DSS defendants; and order of adjudication issued by the state court, adjudicating EJV neglected.  In defense of the motion, plaintiff relies upon the following: sworn testimony of plaintiff, Jennifer Vaughan, and William D. Banks ("Banks"), plaintiff's neighbor; plaintiff's motion to dismiss filed in the custody proceedings; excerpts from the North Carolina Division of Social Services Family Services Manual; documentation from Center for Neurorehabilitation concerning Jennifer Vaughan; letter from plaintiff to defendants Lycett and McCarron; evaluations of Jennifer Vaughan from CorePsych and Leigh, Brain, &Spine; and excerpts from North Carolina Traumatic Brain Injury Advisory Counsel's 2009-2010 annual report.

On April 11, 2018, defendant Matusko filed instant motion for summary judgment and in support submits statement of material facts.  (DE 65).  Plaintiff did not file opposition but on

November 29, 2018, as directed by the court,[2] filed consolidated "supplemental response to DSS defendants' and defendant Matusko's motions for summary judgment," (DE 147), with reliance upon the following: email from Molly Harris confirming plaintiff requested pediatrician recommendation in mid-May 2013; various filings in the custody proceedings, including plaintiff's edits to a statement made in court; news article; affidavit of plaintiff; and various discovery responses submitted by defendants.[3]

On May 15, 2018, plaintiff filed motion to amend complaint, in which plaintiff sought to add defendants Sudduth and White, as well as additional defendants, claims, and allegations. (DE 72). The court held, with regard to defendants Suddouth and White, that "[t]o the extent that plaintiff seeks to join these defendants who were previously identified as ["Officer Does"] and streamline allegations associated with this [Fourth Amendment] claim [as well as plaintiff's other remaining claim under the Fourteenth Amendment] . . . plaintiff's motion to amend is granted." (DE 79 at 3-4). Plaintiff filed second amended complaint on June 20, 2018, which is the operative complaint in this case, to the extent allowed by the court.

Following plaintiff's filing of the operative complaint, on July 11, 2018, defendant Matusko filed instant motion to dismiss for failure to state a claim. (DE 91). In defense of motion, plaintiff seeks to rely upon the following materials: select North Carolina General Statutes; plaintiff's

_____

[2] On August 28, 2018, the court allowed as follows: "Plaintiff has an additional 90 days, up to and including November 12, 2018, wherein she may respond or supplement response to defendants' motions for summary judgment." Vaughan, 2018 WL 4140093, at *3. On September 5, 2018, the court reaffirmed this direction, thereby denying plaintiff's motion for leave to submit response and surreply, filed August 31, 2018. On November 6, 2018, the court granted in part plaintiff's motion for extension of time to file response to summary judgment "solely to the extent that plaintiff is allowed on or before November 30, 2018, to file 1) one supplemental response in opposition to DSS defendants' motion for summary judgment (DE 60) and/or 2) one response in opposition to defendant Matusko's motion for summary judgment (DE 65)." (DE 145 at 5).

[3] Documentation submitted by plaintiff multiple times is identified only once.

petition for judicial review requesting the state court to not place plaintiff on the responsible individuals list ("RIL"); and email correspondence between plaintiff and her former attorney Meader Harriss.

On July 24, 2018, plaintiff filed amended motion for reconsideration, which the court denied on August 23, 2018. (DE 111). On August 13, 2018, DSS defendants renewed their motion for summary judgment, stating "[s]ince the DSS [d]efendants filed their summary judgment motion, the plaintiff has filed a Second Amended Complaint" to which DSS defendants filed answer, but because the second amended complaint "makes the same allegations against the DSS [d]efendants as the First Amended Complaint, on which said defendants filed their summary judgment motion in April," defendants need not refile or submit new motion. (DE 107 at 2).

On September 5, 2018, the court issued text order granting to a limited extent plaintiff's "urgent request for correction of August 28 order," filed September 4, 2018, stating as follows:

> Plaintiff is reminded again that the following two claims have been allowed to proceed: 1) whether plaintiff's Fourth Amendment rights were violated when her home was entered by defendants and 2) whether her reputation was injured, and thus her Fourteenth Amendment rights violated, by allegations concerning her placement on the list of responsible individuals pursuant to N.C. Gen. Stat. § 7B-311. Regarding the latter, the court has dismissed plaintiff's injury to reputation claims except for plaintiff's claim resting upon allegations concerning plaintiff's placement on the list of responsible individuals under N.C. Gen. Stat. § 7B-311, which the court construes to include allegations of serious neglect. The court therefore grants plaintiff's motion requesting "to address how the threat of the RIL and prosecution of serious neglect were fraudulently misused in a way that violated [plaintiff's] due process rights injuring her and her family" only to the extent these allegations are related to plaintiff's surviving claim for injury to her reputation.

On October 1, 2018, defendants Sudduth and White filed instant motion to dismiss complaint as barred by the applicable statute of limitations pursuant to Rule 12(b)(6).[4] On October 9, 2018,

---

[4] Defendants Sudduth and White also raise motions under Rules 12(b)(2), 12(b)(4), 12(b)(5) for insufficient service of process.

defendants Sudduth and White filed motion for protective order and stay of discovery. On October 22, 2018, plaintiff filed the instant motion for extension of time to serve defendants Sudduth and White with complaint. On November 6, 2018, the court granted defendants Sudduth and White's motion for protective order and stay of discovery and held in abeyance plaintiff's motion for extension for time to be addressed concurrently with defendants Sudduth and White's motion to dismiss.

On March 8, 2019, the court directed submission of two state-court orders discussed by plaintiff and DSS defendants in various filings, which DSS defendants timely submitted to the court on March 11, 2019.

## STATEMENT OF THE FACTS

Except as otherwise indicated below, the facts taken in light most favorable to plaintiff and relevant to the resolution of the instant motions are summarized below.[5]

The DSS defendants were involved in the removal of the plaintiff's adult daughter, Jennifer Vaughan, and her minor grandson, EJV, who is Jennifer Vaughan's son, from the plaintiff's home in Kill Devil Hills, North Carolina in August 2013.[6] On August 13, 2013, officials from Dare County Department of Social Services ("Dare County DSS"), accompanied by Kill Devil Hills police officers, removed Jennifer Vaughan from the home, and, on the next day, removed EJV and

---

[5] Regarding the limited number of facts necessary to resolve defendant Matusko's motion to dismiss, those facts are included as alleged by plaintiff in operative complaint. (DE 80).

[6] Plaintiff offers extensive argument and purported evidence in support of her position that the removals of her daughter and grandson were not justified, were executed by means inconsistent with North Carolina law, and were the product of a conspiracy among defendants. However, except to the extent otherwise addressed herein, the court has previously dismissed plaintiff's claims regarding these allegations and declines to address again these arguments. See Vaughan, 2017 WL 4872484; see also District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-84 (1983) (holding that federal courts have "no authority to review final judgments of a state court in judicial proceedings").

placed him in foster care.[7]  On September 18, 2013, Dare County DSS filed a petition alleging that plaintiff's grandson was dependent and neglected.  (DE 108 at 2; DE 62 ¶ 2; DE 63-8 at 5-10 (petition alleging EJV dependent and neglected)).  Dare County DSS obtained guardianship over Jennifer Vaughan.

Although the parties disagree as to why, with DSS defendants alleging possible conflict of interest and plaintiff alleging "just another unlawful tactic DSS used," the parties agree that Dare County DSS thereafter transferred responsibility for EJV to Currituck County Department of Social Services ("Currituck County DSS").  (DE 108 at 3-4; DE 62 ¶ 5).  After custody proceedings concluded, EJV was adopted by unnamed persons, and Jennifer Vaughan was involuntarily committed at least once.  See Vaughan v. Vaughan, 806 S.E.2d 80 (N.C. Ct. App. 2017), review denied sub nom. Matter of E.J.V., 370 N.C. 581, 809 S.E.2d 873 (2018), and cert. denied, 139 S. Ct. 252, 202 L. Ed. 2d 168 (U.S. 2018), reh'g denied, 139 S. Ct. 589, 202 L. Ed. 2d 422 (U.S. 2018).[8]

A.      Facts Related to Fourth Amendment Claims

1.      July 16, 2013, Incident

In July 2013, social workers and Kill Devil Hills police officers came to plaintiff's house with a court order, which plaintiff only saw briefly; plaintiff allowed entry under duress. (See DE 80 ¶¶ 57-59 ("The following day what appeared to [p]laintiff to be a SWAT Team consisting of several Kill Devil Hills Police officers wearing padded vests and carrying guns, along with several DSS caseworkers, demanded entrance into [p]laintiff's home. They carried an order, a copy of which

---

[7] Plaintiff disputes the accuracy and necessity of these allegations and the procedures employed to effectuate these removals, but does not dispute that these removals took place.  (See DE 108 at 2-3; DE 62 ¶ 3).

[8] Plaintiff disputes the number of times Jennifer Vaughan was thereafter involuntarily committed and the legality of any and all such commitments.  (See DE 108 at 4-6).

was NOT given, only shown, quickly, to PLAINTIFF, bearing the signature of then Dare County Clerk of Court . . . .")). Plaintiff alleges, against plaintiff's instructions, defendant Ryder "interrogated" plaintiff concerning vitamins, defendants Ryder and Lycett "interrogated" Jennifer Vaughan, defendant Lycett walked into plaintiff's room, and defendant Ryder went through "cabinets, drawers and [the] refrigerator[.]" (See id. ¶¶ 58-59).[9]

2.     August 13, 2013, Incident

Defendants Lycett and Foltz entered plaintiff's home on August 13, 2013, "without warrant or invitation, nevertheless finding EJV well and unharmed, clean and properly clothed and in no need of immediate or other agency assistance" and "seized" Jennifer Vaughan "based on false allegations submitted by DEFENDANT RYDER to fraudulently obtain an order . . . ." (See id. ¶¶ 6, 32).[10]

3.     August 14, 2013, Incident

Defendant Foltz and a police officer came to plaintiff's home on August 14, 2013, and, pursuant to a court order, took custody of EJV. (See id. ¶ 82).[11]


4.     March 4, 2015, Incident

On March 4, 2015, defendant Turnage and a police officer attempted to enter plaintiff's home, described by plaintiff as follows:

---

[9] DSS defendants confirm that defendants Lycett, Ryder, and Foltz entered plaintiff's home on July 16, 2013, under the authority of an administrative search warrant issued by the clerk of court. (DE 62 ¶¶ 17-19).

[10] DSS defendants have put forth evidence that defendants Lycett, Ryder, and Foltz entered plaintiff's home on this date to execute an involuntary commitment order, issued by a magistrate judge, for Jennifer Vaughan. (DE 62 ¶¶ 17-19).

[11] DSS defendants confirm that defendant Foltz entered plaintiff's home on August 14, 2013, in order to take custody of EJV pursuant to order issued by a district court judge. (DE 62 ¶19).

In March 2015 . . . Kill Devil Hills police officer who refused to identify himself came to PLAINTIFF'S home . . . with Dare DSS social worker MELISSA TURNAGE, demanding, after forcing his foot into [p]laintiff's doorway, preventing the door from closing, entrance into PLAINTIFF'S home to "see the mother." . . . . one officer approached and rammed his foot in the door as the mother was closing it. PLAINTIFF moved quickly to assist the mother, requesting if the police bad papers. The officer answered "no," but refused to remove his foot, while PLAINTIFF managed to move a piece of furniture to help the mother keep the door closed and also helped her push against the officer who continued to try to enter . . . . PLAINTIFF stated numerous times that the officer was violating her constitutional rights, and was trespassing on her property insisting that he remove his foot from her doorway and leave her property.

When PLAINTIFF asked the officer his name, he responded only "What do you want it to be.". . . . Finally, after pushing on the door for at least 10 minutes, long enough to argue with [p]laintiff and have the conversation stated above, and long enough for [p]laintiff to tell the Officer multiple times that he was violating her rights, OFFICER White or Sudduth or unnamed Officers Doe yelled that he'd be back with papers, and he would "break down" PLAINTIFF'S door. The mother and PLAINTIFF were both shaking violently as OFFICER DOE left, and the mother, already trying to recover from trauma, was traumatized all over again.

Next, PLAINTIFF called a neighbor and asked him to come over with his video camera . . . . Police officers did indeed return at dark, again traumatizing the mother. Unidentified Kill Devil Hills Officers came to the door and the neighbor began filming. He asked if the officers had papers, and they responded that they did. The neighbor asked to see the papers - to put them up to the door window and· when the officer did; the neighbor began filming, but the officers took it down and said he could not film the paper, which brings into question whether or not they actually had legal warrants . . . . soon thereafter [the officers] began descending the stairs to leave the premises.

(See DE 80 ¶¶ 202-209; DE 108-2 (Jennifer Vaughan's affidavit); DE 108-9 (Banks's affidavit); DE 108-10 (plaintiff's affidavit); DE 62 ¶ 20 (DSS defendants stating "[o]n one occasion, [defendant Turnage] was with a police officer, who knocked on the door and stuck his foot in the doorway when the plaintiff answered but quickly withdrew it, and Turnage remained outside . . . . This incident

occurred on March 4, 2015)).[12]

In sum, although plaintiff alleges other DSS defendants had knowledge of or directed others to enter plaintiff's home illegally the above four times, the parties agree that only four Dare County DSS officials ever physically entered or tried to enter plaintiff's home: defendants Turnage, Lycett, Foltz, and Ryder. (See DE 108 at 13-16; DE 62 ¶¶ 12-15).

B.      Facts Related to Fourteenth Amendment Claims for Injury to Reputation

Plaintiff was initially named in a petition alleging serious neglect of EJV. (See DE 63-8 at 5-10). Although plaintiff disputes DSS's authority to so allege and the legality of execution of the petition, the parties agree that after the Currituck County DSS took over EJV's case from Dare County DSS, it filed a petition on September 18, 2013, for a determination of custody of the child. (DE 108 at 23; DE 62 ¶ 26; DE 63-8 at 5-10). Based on her belief at that time, defendant Hull, the DSS attorney, checked a box on the petition form that said plaintiff had "abused or seriously neglected" the child, though it is clear from the form that only serious neglect was alleged, not abuse. (DE 108 at 23; DE 62 ¶ 26; DE 63-8 at 5-10).[13] Thereafter, plaintiff filed a petition for judicial review of the determination that she was a responsible individual. The clerk of superior court for Currituck County, defendant Matusko, did not calendar the petition for judicial review for hearing.

Currituck County DSS never proceeded on the allegation of serious neglect against plaintiff.

_____

[12] In addition to the incident involving defendant Turnage described above, in which defendant Turnage did not physically enter plaintiff's home, defendant Turnage has physically been in plaintiff's home once, at plaintiff's invitation. Defendant Turnage alleges she has been to plaintiff's home about 15 times, which plaintiff does not dispute, but saw the plaintiff there only twice and went inside just that one time. (DE 62 ¶19; DE 108 at 8-9, 13-15, 19-21).

[13] The box for allegations of abuse or serious neglected was removed from state forms beginning October 1, 2013.

At court hearing on November 18, 2013, the parties entered into a stipulation in which it was agreed that DSS would not move forward on the allegation of serious neglect, although plaintiff alleges she was coerced into signing this stipulation. (DE 63-8 at 11-12; DE 108 at 25-26).

## DISCUSSION

A.    Standard of Review

    1.    Motion to Dismiss

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

    2.    Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.

Id. at 489-90.

B.      Analysis

        The court first addresses plaintiff's claims against defendant Sudduth and White, holding

these claims are barred by the applicable statute of limitations.  The court next turns to plaintiff's

constitutional claims, finding the relevant DSS defendants are entitled to qualified immunity

regarding plaintiff's Fourth Amendment and Fourteenth Amendment claims and that plaintiff's

Fourteenth Amendment claim against defendant Matusko fails to state a claim upon which relief can

be granted.

        1.      Defendants Sudduth and White

        Plaintiff's claims against defendants Sudduth and White are dismissed as barred by the

applicable statute of limitations.  Plaintiff has been allowed to proceed on claims under § 1983,

alleging these two defendants were involved in a March 4, 2015, incident that resulted in a violation

of plaintiff's Fourth Amendment rights.  (See DE 80 ¶¶ 202-209).  This is the only incident

described in the complaint involving these two defendants.

        Plaintiff's § 1983 claims are subject to the three-year statute of limitations.  Section 1983

does not contain a statute of limitations, but "borrow[s]" its statute of limitations from the forum

state's "most analogous" statute of limitations.  Owens v. Okure, 488 U.S. 235 (1989).  Generally,

the "most analogous" statute of limitations is the one applicable to personal injury cases.  In North

Carolina, the statute of limitations for personal injuries is three years.  See N.C. Gen. Stat. §

1–52(16).[14]  Accrual of the statute of limitations, however, is a matter of federal law.  Nat'l Advert.

Co. v. City of Raleigh, 947 F.2d 1158, 1162 (4th Cir. 1991). Under federal law, a cause of action

_____

        [14] Under N.C. Gen. Stat. § 1–52(13), the statute of limitations for claims against public officers acting under
color of office is also three years.

14

accrues when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995).

Plaintiff alleges that she told the subject officer on the date of the incident that he was violating her constitutional rights; thus, plaintiff knew of the alleged injury on March 4, 2015, and the statute of limitations for this alleged violation expired on March 4, 2018. Plaintiff did not file a motion seeking to add defendants Sudduth and White as parties until May 15, 2018. (DE 72). The operative complaint naming these defendants was not filed until June 20, 2018, (DE 80), and summonses were not issued until August 6, 2018, (DE 105).

Plaintiff's naming of "Officer Does" in the original complaint does not toll the limitations period for her alleged claims against these defendants. Claims under § 1983 borrow the applicable state law tolling provisions. See Hardin v. Straub, 490 U.S. 536, 539 (1985). While North Carolina law allows a plaintiff to name a defendant as "John Doe" in initial pleadings where the actual name of the defendant is unknown, to be later substituted when the identity of the defendant is learned, the statute does not include a tolling provision. See, e.g., Huggard v. Wake Cty. Hosp. Sys., 102 N.C. App. 772, 775 (1991) (stating that "General Statutes § 1-166 does not by its terms contain a tolling provision . . . . While our legislature has the power to explicitly provide for such a tolling under the 'John Doe' statute, it has not done so"; listing other North Carolina statues with tolling provisions); Denny v. Hinton, 110 F.R.D. 434, 436-37 (M.D.N.C. 1986) (finding "[n]o historical support . . . for the view that fictitious name pleading statutes, such as section 1–166, had a purpose of extending the time within which to bring actions"; concluding North Carolina legislature had not intended to use § 1–166 for such a purpose); see generally N.C. Gen. Stat. § 1–166 (allowing

plaintiff to file suit against a fictitious defendant "[w]hen the plaintiff is ignorant of the name of a defendant"). As previously stated by this court, "[t]his is consistent with the North Carolina Supreme Court's observation that a John Doe complaint cannot be filed 'in the hope that at a later time the attorney filing the action may substitute the real name [of the John Doe] . . . and have the benefit of suspension of the limitation period.'" Lee v. City of Fayetteville, No. 5:15-CV-638-FL, 2016 WL 1266597, at *7 (E.D.N.C. Mar. 30, 2016) (citing Burcl v. N.C. Baptist Hosp., Inc., 306 N.C. 214, 225 n.7 (1982)).

Nor are plaintiff's claims saved by any reliance on equitable tolling. Under North Carolina law, equitable tolling precludes a statute of limitations defense "when a party has been induced by another's acts to believe that certain facts exist, and that party 'rightfully relies and acts upon that belief to his detriment.'" Jordan v. Crew, 125 N.C. App. 712, 720 (1997) (quoting Thompson v. Soles, 299 N.C. 484, 487 (1980)); accord Nowell v. Great Atl. & Pac. Tea Co., 250 N.C. 575, 579 (1959). Here, while plaintiff alleges that the subject officers refused to give their names, plaintiff has not alleged that she was deceived by the subject officers about their identities. Rather, she named defendants Sudduth and White after they were identified "by staff at the department, Mr. Evans." (DE 80 ¶ 304). There is no allegation that anyone induced plaintiff to rely upon false information about the officers' identities that would justify equitable tolling under North Carolina law; as such, equitable tolling does not save plaintiff's claims.[15]

---

[15] In Aikens v. Ingram, 524 F. App'x 873, 882-83 (4th Cir. 2013) the Fourth Circuit held that "[w]e are thus convinced that North Carolina is among the jurisdictions that embrace the mainstream view that equitable tolling—and not just equitable estoppel—may serve to extend a statute of limitations," applying the following test: "we must consider whether defendants Ingram and von Jess received timely notice of Aikens's claims, whether the defendants have been prejudiced by delay of the litigation, and whether Aikens has acted with diligence." Here, however, as discussed below, the court finds plaintiff did not act with diligence. See also Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003) (to benefit from the doctrine of equitable tolling, one must show: 1) extraordinary circumstances, 2) beyond his control or external to his own conduct, 3) that prevented him from filing on time).

Finally, the court must consider whether plaintiff's claims against defendants Sudduth and White relate back to plaintiff's original complaint. Under Rule 15(c)(1)(c) "an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading" if 1) the claim in both the original and amended complaint arise out of the "same transaction"; 2) the party to be brought in by the amendment "received notice of the action such that it will not be prejudiced in maintaining a defense to the claim"; and 3) that party "should have known that it would have originally been named a defendant 'but for a mistake concerning the identity of the proper party.'" Goodman v. Praxair, Inc., 494 F.3d 458, 467 (4th Cir. 2007) (en banc) (quoting Fed. R. Civ. P. 15(c)(1)(C)(ii)).

It is well-settled in this circuit that plaintiff should not be permitted to amend her complaint to remove the John Doe defendants and substitute real parties, because their lack of knowledge of the proper defendants is not considered a "mistake" under Rule 15(c)(3). See Locklear v. Bergman & Beving AB, 457 F.3d 363, 366–67 (4th Cir. 2006). To allow "would produce a paradoxical result wherein a plaintiff with no knowledge of the proper defendant could file a timely complaint naming any entity as a defendant and then amend the complaint to add the proper defendant after the statute of limitations had run. In effect, this would circumvent the weight of federal case law holding that the substitution of named parties for 'John Doe' defendants does not constitute a mistake pursuant to Rule 15(c)(3)." Id. at 367.

As stated by this court in Lee,

Rule 15(c)(1)(C)(ii) requires that the defendant to be added have notice "that but for a mistake, it would have been a party." [Goodman, 494 F.3d] at 471. However, "naming Doe defendants self-evidently is no 'mistake' such that the Doe substitute has received proper notice." Id.; accord Hogan v. Fischer, 738 F.3d 509, 517–18 (2d Cir. 2013); Smith v. City of Akron, 476 F. App'x 67, 69 (6th Cir. 2012); Locklear v. Bergman &Beving AB, 457 F.3d 363, 367 (4th Cir. 2006). A "mistake" is an

"'error, misconception, or misunderstanding; an erroneous belief.'" Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 548 (2010) (quoting Blacks Law Dictionary 1092 (9th ed. 2009)); accord Goodman, 494 F.3d at 470–71. Plaintiff's ignorance of the proper party's identity is not an error, misconception, or misunderstanding. See Krupski, 560 U.S. at 548; see also Goodman, 494 F.3d at 471 ("The 'mistake' language . . . implies that the plaintiff in fact made a mistake."). Thus, even where plaintiff could demonstrate the proper party had notice, such notice would not be the result of a "mistake."

2016 WL 1266597, at *8.[16]

Plaintiff's claims against defendants Sudduth and White also would not relate back under the federally-created equitable tolling doctrine employed in some courts. See Byrd v. Abate, 964 F. Supp. 140 (S.D.N.Y. 1997); see also Archibald v. City of Hartford, 274 F.R.D. 371, 376–77 (D. Conn. 2011) (collecting cases). In Byrd, the court held that a proposed amendment to a John Doe complaint was timely, even where the statute of limitations had run, because the defendant's counsel "failed to identify the [John Doe] defendant despite [the plaintiff's] [timely] requests for that information." Byrd, 964 F. Supp. at 146. The court implicitly tolled the statute of limitations because defense counsel had delayed and thus had prevented plaintiff from timely amending his John Doe complaint. In particular, the court reasoned that the amendment was timely because the plaintiff had made diligent efforts to obtain the John Doe defendant's true identity, "information uniquely within the knowledge of [defense counsel]." Id.

Assuming, without deciding, that Byrd's tolling rule applies in this instance, the court concludes that it would offer plaintiff no relief. The crux of the Byrd case was the plaintiff's timely

---

[16] As stated in Lee, there are three basis under North Carolina law that could potentially apply to plaintiff's claim under Rule 15(c)(1)(A): 1) tolling for John Doe complaints, under N.C. Gen. Stat. § 1–166, 2) equitable tolling, and 3) relation back under North Carolina Rule of Civil Procedure 15. The court here rejects each of these, however, for reasons stated above and for the same reasons provided in Lee. 2016 WL 1266597, at *9 ("neither N.C. Gen. Stat. § 1–166 nor equitable tolling offer plaintiff any relief . . . . Because the use of a John Doe defendant is not a mistake, an amended complaint would go beyond correcting a mere 'misnomer' and would not relate back under North Carolina law.").

attempts to obtain discovery. There, the plaintiff filed his complaint in March of 1993, approximately 18 months before the three-year limitations period expired in October of 1994. In January of 1994, the plaintiff's counsel requested the identity of the John Doe defendant. Id. at 145. However, through a series of procedural tactics, defense counsel kept secret that information until January 1995, almost three months after the statute of limitations had run.

Although plaintiff filed her original petition to proceed IFP in this case on August 15, 2016, well before the statute of limitations had run on March 4, 2018, plaintiff has not shown timely attempts to obtain discovery. On November 20, 2017, plaintiff sought to amend complaint to identify "Officer Does," which the court held to be premature, where plaintiff stated "she is now obtaining police records that aid in the identification of the officers." (DE 19 at 2).[17] It was not until May 15, 2018, however, that plaintiff again sought to amend complaint to include defendants Sudduth and White, after the expiration of the statute of limitations period, stating that these defendants had been "recently identified by police department staff as officers coming to [p]laintiff's home on March 4, 2015," but in no way indicating such information had been withheld from plaintiff. (DE 72 at 1).[18]

---

[17] Originally, plaintiff identified the March 4, 2015, incident as occurring in February. (See DE 80 ¶ 304 ("The incident regarding the Officers who came to [p]laintiffs home in March (previously thought to be Feb.) 2015 has been described herein above.")). Plaintiff has stated that she "could not be certain of the exact date of the incident until attorney for other defendants disclosed the date in one of its pleadings," stating plaintiff "finally learned of the names after enquiring of the police department via an email, as soon as she knew the correct date of the violation." (DE 141 at 2). Plaintiff has additionally stated that she was unable to determine the exact date because police records requested by plaintiff "as early as November, 2017" for the months of February and March 2015 "failed to report the details of the visit [p]laintiff complains of" and are "misleading in their omissions." (DE 150 at 3). However, review of the police report submitted by plaintiff, (DE 150-2), indicate three logged incidents during this time frame, one of which is defendant Turnage requesting police escort on March 4, 2015, which was assigned to defendant Sudduth's unit. (See DE 150-2 at 4). It is unclear why plaintiff was unable to determine sooner, and in a timely fashion, when the alleged violation occurred.

[18] Plaintiff has offered unpersuasive reasoning for this elapse of time, belied by the record, where plaintiff stated that after the incident on March 4, 2015, "and earlier similar incidents, [p]laintiff was understandably afraid for her personal safety . . . to go or even call the Kill Devil Hills police department and demand copies of records disclosing

Therefore, plaintiff's operative complaint naming defendants Sudduth and White does not relate back to the filing of any prior complaint, and does not save plaintiff's claims against these defendants. Accordingly, plaintiff's claims against defendant Sudduth and White are dismissed as time-barred. Given the court's holding, it is unnecessary to address defendant Sudduth and White's arguments concerning sufficiency of process. Additionally, the court's holding renders moot plaintiff's motion for extension of time to serve defendants Sudduth and White with complaint.

2.    Constitutional Claims

Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). For the reasons discussed below, plaintiff has not demonstrated the violation of a constitutional right, and the relevant defendants are therefore entitled to qualified immunity.

a.    Fourth Amendment Claims

"The Fourth Amendment protects against unreasonable searches and seizures." Wildauer v. Frederick Cty., 993 F.2d 369, 372 (4th Cir. 1993) (citing United States v. Place, 462 U.S. 696 (1983)). In the context of a qualified immunity analysis, the Fourth Circuit has explained that a magistrate's determination of probable cause supports an inference that an officer's actions in seeking an arrest warrant were objectively reasonable. Torchinsky v. Siwinski, 942 F.2d 257, 261

<hr/>

the officers' names." (DE 141 at 2; see also, e.g., DE 80 ¶ 304 ("Plaintiff spoke with Sudduth on the phone last week and asked him, point blank if he was the one who rammed his foot in her door.")).

(4th Cir. 1991); see also Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 171 (4th Cir. 2016) ("The presumption in Torchinsky thus was not a presumption that probable cause existed, but a presumption of the reasonableness of the officer's reliance on the arrest warrant."). This inference, though, is not dispositive. "The presumption of reasonableness attached to obtaining a warrant can be rebutted where 'a reasonably well-trained officer in [the defendant's] position would have known that his application failed to establish probable cause and that he should not have applied for the warrant.'" Torchinsky, 942 F.2d at 261 (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)); see also Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) (quoting United States v. Leon, 468 U.S. 897, 922-923 (1984)) (stating warrant "is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'").

The presence of a warrant, or parallel court order, is relevant to the court's qualified immunity analysis in this case. See Torchinsky, 942 F.2d at 261 ("Thus, the decision of a detached district judge that Siwinski satisfied the more stringent probable cause standard is plainly relevant to a showing that he met the lower standard of objective reasonableness required for qualified immunity."); Fialdini v. Cote, 594 F. App'x 113, 121 (4th Cir. 2014) (citing Torchinsky, 942 F.2d at 261) ("the fact that three judicial officers—the federal district judge, the Loudoun County district judge, and the magistrate judge all found that probable cause existed is 'plainly relevant to a showing that [Deputy Cote] met the lower standard of objective reasonableness required for qualified immunity.'").

Plaintiff alleges four incidents wherein DSS defendants entered or attempted to enter her home without her permission.[19] The court addresses each incident in turn below.

---

[19] The Fourth Amendment was not implicated by the one instance in which the plaintiff invited defendant Turnage into her home.

i.      July 16, 2013, Incident

As stated above, plaintiff alleges that in July 2013, social workers and Kill Devil Hills police officers came to her house with a court order, which she alleges she only saw briefly, and she let them in under duress. (DE 80 ¶¶ 57-59).  Plaintiff argues "[d]efendants have declined to produce copies proving authority to enter and/or search [p]laintiff's home," and therefore "plaintiff asserts that no one forcing entry into her home ever had probable cause, that no one had any right to search through her kitchen cabinets . . . and neither Lycett nor Foltz had any authority to enter, based on an alleged court order seeking only to speak to JV, as it was presented to [p]laintiff in July and August."  (DE 108 at 11-12).  It appears, in sum, that plaintiff argues the order does not exist, was not supported by probable cause, and DSS defendants did not conduct themselves consistent with what the order directed.

DSS defendants argue that plaintiff has in her possession the relevant administrative search warrant which was signed by the clerk of the court.  DSS defendants have provided copy of this warrant to the court in response to the court's request.[20]  (See DE 158-2).  The warrant authorizes inspection of plaintiff's property based on affidavit evidence.  (See id. ("This inspection is authorized to check or reveal the conditions, objects, activities, or circumstances indicated in the accompanying affidavit.").  The warrant was issued based on affidavit sworn by defendant Ryder, a medical social worker, wherein defendant Ryder testified, under oath, "there is probable cause for believing" as follows:

---

[20]  Administrative search warrants are permitted by N.C. Gen. Stat. § 15-27.2 and require a showing by an affiant of probable cause of the existence of facts justifying the search. See Sunkler v. Town of Nags Head, No. 2:01-CV-22-H(2), 2002 WL 32395571, at *4 (E.D.N.C. May 17, 2002), aff'd, 50 F. App'x 116 (4th Cir. 2002) ("The North Carolina statutes authorizing administrative search warrants also echo familiar federal language. . . .  The court concludes for the same reasons set forth in section III, supra [discussing Fourth Amendment claim] that probable cause supported the issuance of the administrative search warrant.").

that there is [an adult protective services] report of a disabled adult, who has a history of mental illness that has gone untreated. Adult resides with her mother who . . . may be abusing and neglecting the adult based on information that DSS has received, DSS has obtained a letter written by the adult stating that she is dying and her mother stole her wallet and keys. Adult has stated, "I'm locked away here." . . . . On 7/15/13 at 11:30 a.m and 2:30 p.m., SW Ryder and SW Bradley attempted a home visit to see the adult. The first attempt, no one would answer the door. On the second attempt, adult mother came out of the home screaming that she had been poisoned by the air conditioner and she has no idea where her daughter was. At this point, SW was in the driveway and adult's mother would not let SW come to the door to see her daughter. Adult's mother would not allow SW to move closer to the front door to have access to the adult. Adult's mother brought adult to the deck and a note was thrown over the banister to SW Ryder. At no time, did SW see the adult. On 7/16/13 at 10:20 a.m. SW Ryder and SW Bradley went back to the home with the Kill Devil Hills Police. At this time, no one would answer the door.

(Id.).

Plaintiff alleges this warrant, and other court orders discussed below, were secured by the relevant DSS defendants through lies or fraud; plaintiff, however, has not submitted evidence in support of these accusations.[21]   Additionally, plaintiff has confirmed the existence of the letter received by DDS discussed above and that defendant Ryder tried to see and speak with Jennifer Vaughan, with very limited success, although plaintiff disputes such would justify a court order. (DE 108 at 17; see also DE 108-4 ¶¶ 8-9).  Plaintiff has failed to rebut the presumption that the court order at issue was supported by probable cause.  Thus, the relevant DSS defendants are entitled to qualified immunity regarding the July 16, 2013, incident.[22]

ii.     August 13, 2013, Incident

---

[21] More specifically, plaintiff alleges in the operative complaint that defendant Ryder "deceived Clerk of Court Merlee Austin by providing false information in support of her application for a warrant to enter PLAINTIFF'S home and interrogate the child's mother, lying that the mother had refused to speak to her." (DE 80 ¶ 262).  However, as stated above, plaintiff has submitted affidavit evidence from Jennifer Vaughan stating that Jennifer Vaughan refused to let defendant Ryder physically see her when defendant Ryder had come to plaintiff's home.  (See DE 108-4 ¶¶ 8-9).

[22] Regarding this incident and those addressed below, because the court concludes that defendants' actions did not violate the Fourth Amendment, the first prong of the qualified immunity analysis, the court need not consider the second prong of the qualified immunity analysis.  Pearson, 555 U.S. at 236, 243–45.

On August 13, 2013, defendants Lycett, Foltz, and Ryder entered plaintiff's home to execute an involuntary commitment order, issued by a magistrate judge, for Jennifer Vaughan. (DE 80 ¶ 6, 32; DE 108 at 18).[23] Although plaintiff, without evidentiary support, argues that this order was "based on false allegations submitted by DEFENDANT RYDER to fraudulently obtain an order," (DE 80 ¶ 32), similar to above regarding the July 16, 2013, incident, no further information is offered regarding what specific false allegations may have been submitted by defendant Ryder.

Defendant Ryder has offered the following affidavit testimony:

In 2013, I was assigned to work on the case involving Jennifer Vaughan. Dare County DSS' involvement with Jennifer went back to April 2008. Jennifer has a history of mental illness, including schizophrenia, and for a period in 2010 and 2011 the Dare County DSS served as her court-appointed guardian because she was deemed not competent to take care of herself. In July 2013, DSS received a report that Jennifer might be neglected or abused. At the time she was living with her mother, Susan Vaughan . . . .

In August 2013, I went back to the home with two other DSS social workers, Shannon Foltz and Chuck Lycett, to observe the execution of an involuntary commitment order for Jennifer that had been issued by a judge in Dare County District Court. We were accompanied by Kill Devil Hills police officers. The police officers went in first and the social workers followed. We spoke to Jennifer and the police took custody of her and drove her to the hospital, where she was admitted for treatment. The court granted DSS interim guardianship over Jennifer.

(DE 63-1 ¶¶ 3, 5).[24]

Defendants Lycett, Foltz, and Ryder acted pursuant to an order signed by a magistrate judge.

---

[23] An involuntary commitment order can be issued by a clerk of superior court or magistrate pursuant to N.C. Gen. Stat. § 122C-261 upon a showing by an affiant of "reasonable grounds" for issuance. "'Reasonable grounds' has been found to be synonymous with 'probable cause'" and North Carolina courts have held "the requirements for a custody order under N.C. Gen. Stat. § 122C-261 are analogous to those where a criminal suspect is subject to loss of liberty through the issuance of a warrant for arrest," stating "[i]n both instances a magistrate or other approved official must find probable cause (though under N.C. Gen. Stat. § 122C-261 the synonymous term reasonable grounds is used) supporting the issuance of the order or warrant." In re Zollicoffer, 165 N.C. App. 462, 466 (2004) (citations omitted); see also In re Moore, 234 N.C. App. 37, 41 (2014) (same).

[24] Plaintiff has directed the court to disregard DSS defendants' affidavits submitted in support of their motion for summary judgment as fraudulent and unable to support the grant of qualified immunity. (See DE 108 at 27-28). However, plaintiff has submitted no evidence in support of her allegations of fraud.

Because plaintiff has not offered evidence to rebut the presumption that these defendants acted pursuant to valid court order supported by probable cause in executing the involuntary commitment order, these defendants are entitled to qualified immunity regarding the August 13, 2013, incident.

### iii.     August 14, 2013, Incident

Defendant Foltz and a police officer entered plaintiff's home on August 14, 2013, in order to take custody of EJV pursuant to order issued by a district court judge. (DE 80 ¶ 82; DE 108 at 19). Turning to this order, the following was presumably submitted in support of obtaining the nonsecure custody order:

> The Child is in need of assistance from the State,
>
> I. The following reasonable efforts were made to prevent or eliminate the need of the juvenile placement:
>
> • Child Protective Services have been provided since May 2013.
> • Information has been provided about child development
> • Assistance was made for applying for Medicaid for the child
> • Information was provided about how to obtain birth certificate.
> • Social Worker has attempted to meet with mother multiple times at the home.
> • Two Letters have been sent to mother requesting contact.
>
> II. Reasons Why It Is Contrary to Best Interest of Child to be returned to the Parents:
>
> • Jennifer Vaughan has an untreated mental illness, namely schizophrenia. She has been involuntarily committed to Vidant Behavioral Health and is unable to care for her child. Ms. Vaughan is unable to ascertain the needs of her child. Ms. Vaughan had her competency restored on August 5, 2011, but has not been on her medication. Ms. Vaughan identified the putative father on August 14, 2013. No appropriate caretaker has been identified.

(See DE 158-1; see also DE 63-6).[25]

Plaintiff argues that although she has in her possession the order at issue, she has offered

---

[25] The above is stamped as received by the magistrate judge at the same time and date as the signed order, although the information is not signed or dated and is only labeled as "exhibit A" attached to the signed order. (DE 158-1).

evidence that this order "was obtained by fraud, omission that [p]laintiff was custodian of EJV, and without any emergency or time of day to permit Foltz to seek a nonsecure custody order," arguing that the order is "illegal and void, and [defendant Foltz's] petition contains no allegations, even it true, that meet the requirements of 7B-503 and/or the definitions of neglect and dependency." (DE 108 at 19). Notwithstanding, plaintiff does not dispute that Jennifer Vaughan had a mental illness for which she was not receiving treatment, that she had been involuntarily committed, and that she had not been on medication.[26]

In light of these undisputed facts, the court holds defendant Foltz entitled to qualified immunity for entering plaintiff's home with a court order to take custody of EJV. See Ross v. Klesius, 715 F. App'x 224, 226 (4th Cir. 2017) (citation omitted) (holding that even without court order and "[e]ven assuming, without deciding, that Defendants violated Ross' Fourth Amendment rights, their conduct in entering or directing others' entry into Ross' home to retrieve her foster children, under the circumstances presented, did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"); see also Martin v. Saint Mary's Dep't of Soc. Servs., 346 F.3d 502, 506 (4th Cir. 2003) (recognizing state's legitimate interest in investigating allegations of child neglect); Wildauer, 993 F.2d at 372 (discussing reduced Fourth Amendment scrutiny applicable to home visits by social workers).[27]

---

[26] Plaintiff does dispute, however, what mental illness Jennifer Vaughan suffers from, whether or not she should have been involuntarily committed, and why she had not been taking medication.

[27] Although DSS defendants argue otherwise, it does not appear that the district court's nonsecure custody order presently at issue is equivalent to an arrest warrant as contemplated by Torchinsky that therefore carries a presumption of reasonableness. Section 7B–502 of the North Carolina General Statutes gives the district court authority to issue an order placing a child in nonsecure custody. Section 7B–503(a) sets forth the criteria for nonsecure custody and states: "An order for nonsecure custody shall be made only when there is a reasonable factual basis to believe the matters alleged in the petition are true . . . ." Such a standard is not similar to a magistrate judge finding probable cause for arrest. Torchinsky, 942 F.2d at 261. Thus the court does not apply the presumption of reasonableness; however, as stated above, defendant Foltz is notwithstanding entitled to qualified immunity.

iv.     March 4, 2015, Incident

Although plaintiff alleges defendant Turnage directed the actions of police officers during this incident, and more generally that a conspiracy existed among various DSS officials to remove Jennifer Vaughan, plaintiff does not dispute that Jennifer Vaughan was removed pursuant to a court order nor that no DSS defendant entered plaintiff's home during this incident.[28]  (See DE 80 ¶¶ 202-209). The court therefore holds defendant Turnage did not violate plaintiff's Fourth Amendment rights during the March 4, 2015, incident, and thus defendant Turnage is entitled to qualified immunity.[29]

In sum, the relevant DSS defendants are entitled to qualified immunity regarding plaintiff's Fourth Amendment claims.[30]

b.     Fourteenth Amendment Claims

An injury to reputation claim based on denial of procedural due process is premised on two rights guaranteed by the Fourteenth Amendment:  1) "the liberty to engage in any of the common occupations of life" and 2) "the right to due process [w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him."  Sciolino v. City of Newport News, Va., 480 F.3d 642, 646 (4th Cir. 2007) (alteration in original) (citations omitted)

---

[28]  As stated above, the court has previously dismissed plaintiff's conspiracy claims.  (Vaughan, 2017 WL 4872484, at *6  (citing Glassman v. Arlington Cty., VA, 628 F.3d 140, 150 (4th Cir. 2010) ("Therefore, the court holds that plaintiff has failed to assert a constitutionally protected interest in order to state a due process claim regarding the challenged state civil commitment proceedings. Additionally, her allegations of conspiracy related to her deprivation of the constitutionally protected interest must also fail.")).

[29]  Because the court has dismissed plaintiff's claims against defendants White and Sudduth as barred by the statute of limitations, the court does not address any potential Fourth Amendment claims against these defendants.

[30]  Regarding other DSS defendants, plaintiff argues that "although neither Corprew, McCarron or Burrus ever physically entered plaintiff's home that she is aware of, they are responsible for the actions of their subordinates . . . ." (DE 108 at 14).  Because the court has found that the DSS defendants who entered plaintiff's home did not violate plaintiff's Fourth Amendment rights, plaintiff's arguments regarding defendants Corprew, McCarron, and Burrus must fail.

27

(quoting <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 572 (1972) and <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437 (1971)). However, the Supreme Court has held that reputation alone does not implicate any "liberty" or "property" interest sufficient to invoke the procedural protection for the due process clause and something more than simple defamation, for example "some more tangible interests such as employment," must be involved to establish a claim under § 1983. <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976). As held by the Fourth Circuit, "a plaintiff bringing a 'stigma-plus' claim under <u>Paul</u> must allege both a stigmatic statement and a state action that distinctly altered or extinguished his legal status." <u>Evans v. Chalmers</u>, 703 F.3d 636, 654 (4th Cir. 2012) (citations omitted).

Section 7B-311 of the North Carolina General Statutes provides in relevant part that the "Department of Health and Human Services shall maintain a central registry of abuse, neglect, and dependency cases and child fatalities that are the result of alleged maltreatment that are reported under the Article . . . . The Department shall also maintain a list of responsible individuals."[31]

Plaintiff argues that her "Fourteenth Amendment rights relate specifically to false, distorted, irrelevant, fabricated and demeaning allegations and unsubstantiated conclusions made by both Dare and Currituck DSS departments," referencing defendant Hull identifying plaintiff as potentially responsible for the "serious neglect" of EJV in the juvenile petition submitted to the state court in

---

[31] North Carolina has a statutory scheme for placing an individual on the RIL and providing due process to challenge such an inclusion. A person may not be placed on the list unless one of three things occurs: 1) he or she is notified of a right to a hearing on the issue and fails to respond, 2) a court determines after a hearing that the person should be placed on the list, or 3) the person is convicted in criminal court of the same incident that forms the basis for placing him or her on the list. <u>See</u> N.C. Gen. Stat. § 7B-311(b)(1)-(3). Section (c) of the statute makes the list confidential and limits access to it only to persons authorized to view it. N.C. Gen. Stat. § 7B-320, entitled "Judicial Review; Responsible Individuals List," provides individuals a right to challenge a determination that they have been found responsible for abuse or serious neglect. This statute requires that, when a social services agency has determined after investigation that an individual is responsible for abuse or serious neglect, the agency director must deliver written notice of this finding to the individual. N.C. Gen. Stat. § 7B-323, then allows the individual to file with the court a petition for judicial review of the allegation of abuse or serious neglect.

September 2013. (DE 147 at 1).[32] Plaintiff further alleges that "[b]ased on information in the NC DHHS website and state statutes, [p]laintiff believes it's likely that at some point she was placed on the RIL, and certainly the charges against her were never removed from the record, and most probably she has been placed on the Central Registry, identified as a 'perpetrator.'" (DE 108 at 22).

Here, it is unnecessary for the court to address whether plaintiff has provided sufficient evidence of a "state action that distinctly altered or extinguished [her] legal status" in support of her injury to reputation claim where plaintiff has failed to provide sufficient evidence of a "stigmatic statement." See Evans, 703 F.3d at 654.

DSS defendants have put forth undisputed affidavit evidence from Currituck County DSS's attorney, defendant Hull, as follows:

> Upon my instruction, the Currituck County Department of Social Services performed an intensive and extensive investigation and review of the Responsible Individuals List on December 12, 2017, and this investigation revealed that Susan Vaughan is not and never has been on this list. I reviewed the results of this search. The list is maintained by the North Carolina Department of Health and Human Services. Access to it is limited to authorized persons as set out by the North Carolina Administrative Code. This includes state and local social-service officials, including certain county DSS officials and their clerical staff. It is otherwise confidential and not open to public inspection.

(DE 63-8 ¶ 7).

Additionally, during the custody proceedings, plaintiff, Jennifer Vaughan, and certain DSS defendants stipulated as follows:

> All parties stipulate that if the court conducted a hearing the court would find the facts in the Stipulation by clean, cogent and convincing evidence as set forth in this stipulation and would conclude from these facts that the child noted above is neglected, according to N.C.G.S. 7B-101(15), in that the juvenile does not receive

---

[32] Although plaintiff brings this claim against multiple defendants, it appears undisputed that only defendant Hull, the Currituck DSS attorney, checked the box on the juvenile petition filed in September 2013. (See DE 63-8 ¶ 4; id. at 5-10).

proper care from his parent and/or caretaker, that he does not receive proper medical care and lives in an injurious environment to his welfare.

Based on this stipulation, Currituck DSS has agreed not to proceed on the allegations regarding dependency or serious neglect as set forth in any petition filed to date.

(DE 63-8 at 11).

Although plaintiff denies that EJV was neglected and argues she was coerced into signing this stipulation, plaintiff does not dispute that Currituck DSS agreed to not proceed on the allegations regarding dependency or serious neglect.[33] DSS defendants' evidence presented is unrebutted that plaintiff's name has not been placed on the RIL. Therefore, the court finds no genuine issue of material fact in dispute as to whether plaintiff's name was placed on the RIL.

Plaintiff argues in what appears to be the alternative that even if she was not placed on the RIL, she has been treated as if she was on the list and has suffered the same consequences. (See DE 147 at 27 ("whether or not [p]laintiff's name is on the RIL is irrelevant to the consequences [p]laintiff has suffered, because she is being treated as if she is on the RIL anyway, by both DSS departments, and deprived of the same rights the RIL deprives a person of"); see also DE 80 ¶ 221).

However, in order to state this particular type of due process claim, plaintiff in this instance must not only allege that false statements were made about her that placed a stigma on her reputation, but also that such statements were made public in some way. As determined by the Fourth Circuit:

Our reading of the Hodges' complaint reveals no more than a conclusory allegation of reputational injury which, absent a cognizable stigma and the ensuing loss of a

---

[33] Plaintiff previously withdrew claims against her former attorney; accordingly, the court does not address plaintiff's allegations against this attorney who advised her to enter into this stipulation, including plaintiff's allegations of coercion. See Vaughan, 2017 WL 4872484, at *2 n.5 ("The magistrate judge also recommended the dismissal of the following claims which plaintiff has removed from her amended complaint and therefore which the court need not address . . . claims against attorneys Meander Harriss . . . ."); see also Polk County v. Dodson, 454 U.S. 312, 321 (1981) (holding public defenders do not act under color of state law as required under § 1983).

tangible interest, fails to state a cause of action under § 1983 . . . . given the extensive confidentiality provisions protecting the Hodge investigation report, we see no avenue by which a stigma or defamation labeling the Hodges as child abusers could attach.

Hodge v. Jones, 31 F.3d 157, 165 (4th Cir. 1994); see also Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1101 (9th Cir.1981) ("Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'"); Valmonte v. Bane, 18 F.3d 992, 1000 (2d Cir. 1994) ("There is no dispute that Valmonte's inclusion on the list potentially damages her reputation by branding her as a child abuser, which certainly calls into question her good name, reputation, honor, or integrity . . . . Dissemination to potential employers, however, is the precise conduct that gives rise to stigmatization.").[34] Here, DSS defendants have put forth unrebutted affidavit evidence that the petition at issue was never shared with the public or made public in any way. (DE 63-8 ¶ 4 ("The petition is confidential and sealed by the court, so it is not open to public inspection.")).[35]

Finally, plaintiff argues that although she filed a petition for judicial review challenging the allegation as found in the petition, she was not properly informed of her right for judicial review pursuant to North Carolina Gen. Stat. § 7B-320. However, because the court has found no constitutional violation, state regulations do not provide a basis for a due process violation. Weller v. Dept. of Soc. Services, 901 F.2d 387, 392 (4th Cir. 1990) (holding that if plaintiff "is seeking

---

[34] The court rejects plaintiff's repeated arguments that her injury to reputation claim should survive summary judgment simply because DSS defendants filed the petition on September 18, 2013, the petition became part of the record, and the petition remained legally undisturbed until the relevant parties entered stipulation on November 18, 2013.

[35] Although plaintiff argues that "information submitted by county child welfare agencies to the RIL sub-system of the Central Registry is subject to broader disclosure than the Central Registry," (DE 108 at 26 (citing applicable website)), plaintiff offers no evidence that her court proceedings have been revealed to the public beyond the following unsupported allegation: "Personal communication with Clerks of Court, doctors, Social Security agents and others reveal that DSS passed on derogatory information from its records to others." (DE 102 at 20). These unsupported allegations fail to create a triable issue of fact on this claim.

compliance with state law, this is not the proper forum."); see also Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If the state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").[36]

Similarly, plaintiff alleges that when she filed the petition for judicial review, defendant Matusko never set a hearing date for that petition and did not timely inform the North Carolina Administrative Office of the Courts following her notice of appeal of a state court order relating to the child welfare proceedings. (DE 80 ¶¶ 14, 152, 186). Plaintiff's allegations against defendant Matusko fail to state a claim under 42 U.S.C. § 1983 for injury to reputation after being denied procedural due process for the same reason. Because the court has found no constitutional violation, state regulations do not provide a basis for a due process violation. Weller, 901 F.2d. at 392; Riccio, 907 F.2d at 1469.[37]

In sum, because plaintiff has failed to demonstrate a violation of plaintiff's constitutional rights, the relevant DSS defendants are entitled to qualified immunity and plaintiff has failed to state a claim for relief against defendant Matusko.

3.      Confidential Information in Filings

Although inconsistent attempts at redaction have been made by both plaintiff and DSS defendants to redact confidential information regarding EJV in the filings submitted to the court, both plaintiff and DSS defendants have filed information with the court containing information that should have been redacted. More specifically, plaintiff has filed the following documents that have

---

[36] Because of the court's holding above, it is unnecessary to address DSS defendants' arguments regarding applicability of absolute prosecutorial immunity. See Vosburg v. Dep't of Social Servs., 884 F.2d 133, 145 (4th Cir.1989).

[37] Defendant Matusko filed motion for summary judgment prior to plaintiff filing the operative complaint and thereafter filed motion to dismiss. Given the court's holding above, granting defendant Matusko's motion to dismiss, the court holds that defendant Matusko's motion for summary judgment is rendered moot.

redacted some but not all confidential information regarding the minor: DE 6-4, DE 6-5, DE 48-1 – DE 48-8, DE 48-10, DE 48-13, DE 48-14, DE 98-3 – DE 98-5, DE 98-9, DE 98-10, DE 98-12, DE 98-13, DE 102-5, DE 102-7, DE 108-3, DE 126-2, DE 126-4. Likewise, DSS defendants have filed the following documents that have redacted some but not all confidential information regarding the minor: DE 63-8, DE 158-1. The majority, but not all, of these documents are documents filed with, or issued by, the state court in the custody proceedings.

Under Rule 5.2(a), the name of an individual known to be a minor should not be used in a court filing, only the minor's initials; and the birth date of any individual should not be used, only the year of birth. This general rule does not apply if the filings constitute "the official record of a state-court proceeding" or "the record of a court or tribunal, if that record was not subject to the redaction requirement when originally filed." Fed.R.Civ.P. 5.2(b)(3), (4). However, the state-court proceedings at issue in this case appear not to have been open to the public. (See, e.g., DE 63-8 at 21 ("it is hereby ORDERED, ADJUDGED and DECREED as follows: 1. That this hearing is closed to the public . . . ."). Additionally, pursuant to North Carolina law, "juvenile court records are generally confidential and withheld from public inspection[.]" United States v. Beckton, No. 7:11-CR-61-BR, 2012 WL 1564522, at *2 (E.D.N.C. May 2, 2012).[38]

Finally, even if the general rule does not apply, the court "may order that a filing be made under seal without redaction," or "require the redaction of additional information." In the event of filing under seal, the "court may later unseal the filing or order the person who made the filing to file a redacted version for the public record." Fed. R. Civ. P. 5.2(d) & (e)(1).

---

[38] The exception to the redaction requirement under Rule 5.2(h) does not apply. Under that exception, a party waives the protection of the redaction requirements by filing a document "without redaction and not under seal." Here, neither the minor nor the minor's parent is a party.

Here, the court directs the clerk to seal DE 6-4, DE 6-5, DE 48-1 – DE 48-8, DE 48-10, DE 48-13, DE 48-14, DE 98-3 – DE 98-5, DE 98-9, DE 98-10, DE 98-12, DE 98-13, DE 102-5, DE 102-7, DE 108-3, DE 126-2, and DE 126-4, filed by plaintiff, and DE 63-8 and DE 158-1, filed by DSS defendants.  The court may later unseal the filings or order the person who made the filing to file a redacted version for the public record.

## CONCLUSION

Based on the foregoing,

1.      DSS defendants' motion for summary judgment (DE 60) is GRANTED.

2.      Defendant Matusko's motion for summary judgment (DE 65) is DENIED AS MOOT.

3.      Defendant Matusko's motion to dismiss (DE 91) is GRANTED.

4.      Defendants Sudduth and White's motion to dismiss (DE 135) is GRANTED.

5.      Plaintiff's motion for extension of time (DE 141) is DENIED AS MOOT.

6.      The clerk is DIRECTED to seal DE 6-4, DE 6-5, DE 48-1 – DE 48-8, DE 48-10, DE 48-13, DE 48-14, DE 98-3 – DE 98-5, DE 98-9, DE 98-10, DE 98-12, DE 98-13, DE 102-5, DE 102-7, DE 108-3, DE 126-2 and DE 126-4, filed by plaintiff, and DE 63-8 and DE 158-1, filed by DSS defendants.

Plaintiff's claims against DSS defendants and defendant Matusko are DISMISSED, and plaintiff's claims against defendants Sudduth and White are DISMISSED WITH PREJUDICE. The clerk is DIRECTED to close the case.

SO ORDERED, this the 19th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge

34